CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
1/29/2024
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| **JENNIFER WHITT,** | : |
| Plaintiff, | : |
| v. | : |
| | : Civil Action No. 3:24cv00003 |
| **UNITED HEALTHCARE SERVICES, INC,** | : |
| and **BELK, INC, d/b/a** | : |
| **BELK STORES SERVICES, LLC,** | : |
| Defendants. | : |

## COMPLAINT

COMES NOW the Plaintiff, Jennifer Whitt ("Plaintiff" or "Ms. Whitt"), by counsel, and alleges:

### JURISDICTION AND VENUE

1. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA" or the "Act"), 29 U.S.C. § 1001, et seq., and is brought to obtain relief under Section 502(a)(1)(B), 502(c)(1)(B), and 502(g)(1) of ERISA, 29 U.S.C. § 1132.

2. This Court has subject matter jurisdiction over this action pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1).

3. Venue with respect to this action lies with the Charlottesville Division, pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), because the Plan at issue was breached in Charlottesville, Virginia, where Ms. Whitt should have received her benefits.

1

4. The United Healthcare Services, Inc. ("United") Health & Welfare Plan ("the Plan") at issue, which is sponsored by Belk Stores Services, LLC ("Belk"), is an employee benefit plan within the meaning of 29 U.S.C §1003(a), and an insurance contract plan within the meaning of Section 3(b) of ERISA, 29 U.S.C. §1002(3), and is, therefore, subject to coverage of the Act pursuant to Section 4(a) of ERISA, 29 U.S.C. §1101(a).

5. According to the Plan document, United is the Plan's Claims Fiduciary and Claims Administrator, while Belk is the Plan Sponsor and Named Fiduciary, and Belk maintains responsibility for payment of benefits since the Plan is a self-funded plan. Therefore, both United and Belk are appropriate parties in this suit.

**FACTS**

1. Ms. Whitt was covered by, and a beneficiary of, the Plan while undergoing all medical treatments hereinafter referenced.

2. The Plan's stated benefits include "Skilled Nursing Facility/Inpatient Rehabilitation Facility Services." The plan states that these benefits are available "[i]f the first confinement in a Skilled Nursing Facility or Inpatient Rehabilitation Facility was or will be a cost-effective option to an Inpatient Stay in a Hospital," and the beneficiary "will receive Skilled Care services that are not primarily Custodial Care."

3. The Plan provides only two reasons for denying Inpatient Rehabilitation Facility Services claims:

    a. The Beneficiary is "not progressing in goal-directed rehabilitation services."

    b. The Beneficiary's "[d]ischarge rehabilitation goals have previously been met."

4. On January 22, 2023, Ms. Whitt was admitted to the University of Virginia Medical Center ("the Hospital") for acute encephalopathy, tremors, and akathisia. Ms. Whitt had a limited attention span, was only occasionally able to follow commands, and was unable to maintain balance.

5. On January 26, 2023, Ms. Whitt was seen by Kyle Leonard ("Mr. Leonard"), a Physical Therapist. During this interaction with Ms. Whitt, Mr. Leonard noted that Ms. Whitt was easily distracted, displayed poor motor planning, and impulsively attempted to sit after standing for brief periods of time.

6. Mr. Leonard recommended that Ms. Whitt be discharged from the Hospital and continue her care at a Skilled Nursing Facility.

7. On January 31, 2023, Ms. Whitt was discharged from the Hospital into the care of The Cedars —a Skilled Nursing Facility ("SNF"). The Cedars was to provide Ms. Whitt with intensive physical and occupational therapies.

8. On February 6, 2023, Ms. Whitt was readmitted to the Hospital for treatment of an injury to her right elbow. The injury to her elbow had resulted from a series of falls Ms. Whitt suffered while at The Cedars.

9. At the time of her February 6, 2023 re-admission to the Hospital, Ms. Whitt continued to suffer from confusion and a lack of orientation.

10. On February 20, 2023, Ms. Whitt's occupational therapy and physical therapy teams noted that Ms. Whitt continued to suffer from impaired safety awareness and distractibility. Ms. Whitt required assistance with balancing, functional

3

mobility and transfers, Activities of Daily Living ("ADLs"), and Instrumental Activities of Daily Living ("IADLs").

11. On February 20, 2023, Ms. Whitt's therapy teams also indicated that she would be unsafe and unable to care for herself at her then-current level of mobility and, once again, needed to be discharged to a Skilled Nursing Facility to receive intensive physical therapy and occupational therapy. The therapy teams noted that Ms. Whitt would require gait/balance training to maintain her safety and maximize her functional abilities.

12. Ms. Whitt was discharged from the Hospital on February 22, 2023. At that time, Dr. Brian Peterson ("Dr. Peterson") wrote in Ms. Whitt's discharge summary that she required assistance with balance, functional mobility, and transfers, as well as ADLs.

13. At the time of Ms. Whitt's discharge, Dr. Peterson also noted Ms. Whitt's erratic mental state and ordered that Ms. Whitt be discharged to a Skilled Nursing Facility.

14. On February 22, 2023, Ms. Whitt was transferred to the care of Charlottesville Health and Rehabilitation Center ("CHRC"). At the time of her admission to CHRC, and for days immediately preceding her admission to CHRC, Ms. Whitt was unable to walk 100 feet safely without assistance and unable to perform necessary self-care without assistance.

15. In a letter dated February 22, 2023, United denied Ms. Whitt's claim. In the letter, United told Ms. Whitt: "You can walk 100 feet. You can make your

4

transfers. You can do your daily self-care. [. . .] The admission [to a Skilled Nursing Facility] is not covered."

16. On February 28, 2023, CHRC care providers performed a Minimum Data Set ("MDS") assessment. The MDS results indicated that Ms. Whitt had difficulty focusing attention.

17. The MDS also indicated that Ms. Whitt required: 1) two+ person physical assist walking in corridor; 2) two+ person physical assist with locomotion on unit; 3) two+ person physical assist with locomotion off unit; 4) one-person physical assist with dressing and personal hygiene; 5) supervision or touching assistance with sit-to-stand, 6) supervision or touching assistance with char/bed-to-chair transfer; 7) partial-to-moderate hands-on assistance walking 10 feet, 50 feet with two turns, and 150 feet; and, 8) supervision or touching assistance and picking up objects from the floor.

18. Additionally, the MDS noted that Ms. Whitt was suffering from occasional bladder incontinence and frequent bowel incontinence.

19. A Care Area Assessment ("CAA") was also performed by CHRC care providers on February 28, 2023. The CAA results noted that Ms. Whitt was exhibiting signs of 1) confusion, disorientation, forgetfulness, and poor memory; 2) delirium and changing cognitive status, each limiting mobility, 3) recent falls, 4) restricted mobility and range of motion, 5) inability to perform ADLs without assistance, 6) functional mobility/balance problems requiring extensive assistance for locomotion on and off unit, 7) difficulty maintaining sitting balance; and, 8) impaired balance during transitions.

20. The CAA also reflected a concern that Ms. Whitt was showing signs of poor nutrition with an increased risk for weight loss or malnutrition-related chronic disease, cognitive impairment, and an inability to eat without assistance.

21. While at CHRC, Ms. Whitt received medical treatment, Occupational Therapy, and Physical Therapy five (5) days per week.

22. Ms. Whitt benefited greatly from the aforementioned services, gradually transitioning from requiring extensive assistance with locomotion and ADLs to needing only light assistance, and eventually, only supervision.

23. By the time Ms. Whitt was discharged from CHRC on March 31, 2023, she had improved to the point that she was capable of independent locomotion and was able to perform ADLs for herself.

24. On July 10, 2023, Ms. Whitt, through counsel, submitted a first-level appeal in response to United's February 22, 2023 denial of coverage. In that appeal, Ms. Whitt provided information detailing Ms. Whitt's progress towards her new rehabilitation goals.

25. In a letter dated July 26, 2023 addressed to Ms. Whitt's counsel, United confirmed receipt of Ms. Whitt's appeal and requested a "written authorization from [Ms. Whitt] in order to submit an appeal [. . .] on [Ms. Whitt]'s behalf."

26. On August 4, 2023, Ms. Whitt's counsel responded to United, mailing them a completed copy of their Designation of Authorized Representative ("Authorization") form signed by Ms. Whitt. The Authorization form indicated that it was valid for two years.

27. On August 15, 2023, Ms. Whitt's counsel's staff member, Roseanne Yowell ("Mrs. Yowell") spoke with a United representative named Jasmine who confirmed that the Authorization form was received by United on August 12, 2023, and Jasmine told Mrs. Yowell that Ms. Whitt's counsel would receive a decision on the first-level appeal by August 25, 2023.

28. In a letter dated August 25, 2023, United informed Ms. Whitt and her counsel that they were upholding their initial denial, although for entirely different reasons. In this letter, United reasoned that Ms. Whitt's therapy notes showed that she had "not progressed significantly while in the SNF." Furthermore, United claimed that Ms. Whitt's treatment at CHRC was only "custodial care."

29. On October 17, 2023, Ms. Whitt's counsel submitted via certified mail a second-level appeal to United, reiterating the "skilled" therapeutic services Ms. Whitt received at CHRC that were not only "custodial care", and reiterating the significant progress Ms. Whitt made as a result of the skilled services she received at CHRC.

30. In a letter dated November 4, 2023 to Ms. Whitt's counsel, United claimed that Ms. Whitt's counsel was not authorized to make the second-level appeal and declined to respond substantively to Ms. Whitt's appeal. At the time, the Authorization form that Ms. Whitt already provided and which United confirmed receipt on August 15th was valid for another twenty-one (21) months.

31. On November 13, 2023 and again on November 14, 2023, Mrs. Yowell from Ms. Whitt's counsel's office called and spoke with four different United representatives to remind them that they already received the Authorization on

7

August 12, 2023. Eventually, Mrs. Yowell was instructed to send an email to Pedro Hernandez in United's legal department.

32. On November 14, 2023, Ms. Whitt's counsel emailed Pedro Hernandez, reattaching the Authorization dated August 3, 2023, which remained in effect, and informed him that United had already confirmed receipt of the Authorization on August 12, 2023. Ms. Whitt's counsel also wrote to Mr. Hernandez that counsel expected a response from United on Ms. Whitt's second-level appeal by the due date. Ms. Whitt's counsel received an auto-reply from Mr. Hernandez indicating that he was out of the office until November 24, 2023, and directing Ms. Whitt's counsel to resubmit the email with the words "ESCALATION REQUEST" in the subject line, which Ms. Whitt's counsel did. Ms. Whitt's counsel never received any further reply from Mr. Hernandez and never received a decision on the second-level appeal.

33. As of the date of this filing, United has yet to provide a substantive reply to Ms. Whitt's second-level appeal.

**RELEVANT LAW AND VIOLATIONS**

34. Plaintiff incorporates paragraphs 1 through 33 as though fully set forth herein.

35. Section 502(a)(1)(B) of ERISA states, in relevant part: "A civil action may be brought by a [. . .] beneficiary [. . .] to recover benefits due to him under the terms of his plan" or "to enforce his rights under the terms of the plan[.]" 29 U.S.C. §1132(a)(1)(B).

36. Sections 503(1) & (2) of ERISA state, "In accordance with regulations of the Secretary, every employee benefit plan shall (1) provide adequate notice in

8

writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(1) & (2).

37. Section 502(c)(1)(B) of ERISA states, in relevant part: "Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $110.00 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." 29 U.S.C. §1132(c)(1)(B).

38. The Plan document states, "[t]he Claims Fiduciary must notify you of the second level appeal decision within 15 days after receiving the second level appeal."

39. Section 502(g)(1) of ERISA states, in relevant part: "In any action under this subchapter by a beneficiary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. §1132(g)(1).

9

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter an Order:

A. Declaring that Ms. Whitt was entitled to Skilled Nursing Facility benefits under the Plan for her admission to CHRC from February 22, 2023 – March 31, 2023 and the treatments received while she was there.

B. Ordering the Defendants to reimburse Ms. Whitt for the $20,500.00 worth of benefits wrongfully withheld from her.

C. Finding that, by failing to respond to Ms. Whitt's October 17, 2023 appeal within 15 days, United failed to provide documents they were obligated to provide under Sections 503(1) & (2), and 502(c)(1)(B) of ERISA.

D. Ordering the Defendants to pay to Ms. Whitt $110.00 per day, beginning November 4, 2023, for their ongoing failure to comply with the provisions of ERISA Section 502(c)(1)(B).

E. Ordering Defendants to reimburse Mrs. Whitt for her legal fees and costs to enforce her rights under the Plan, including but not limited to reasonable attorneys' fees, as authorized by 29 U.S.C. §1132(g); and

F. Ordering any other appropriate equitable relief as is appropriate and just.

**JENNIFER WHITT**

By: **/s/ Beth A. Norton**
Beth A. Norton
Virginia Bar Number: 87664
Attorney for Plaintiff
Norton Health Law, P.C.
1441 Sachem Place, Suite 2
Charlottesville, Virginia 22901
Telephone: (434) 978-3100
Fax: (434) 978-3101
[Email: bnorton@nortonhealthlaw.com]

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 29, 2024, a true and accurate copy of this pleading was mailed, first class, postage prepaid to:

>Secretary, U.S. Department of Labor
>200 Constitution Ave NW
>Washington, DC 20210

**/s/ Beth A. Norton**